# Exhibit "L"

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X
FRANKIE VALENTI,

                    Plaintiffs,

     -V-

                    19-CV-03990(GRB)(AKT)

POLICE COMMISSIONER PATRICK J.
RYDER, individually, LIEUTENANT
MARC TIMPANO, individually,
CHRISTOPHER V. TODD, ESQ.,
Individually, OFFICERS "JOHN DOE" 1-2
(Fictitiously named), Individually, and
THE COUNTY OF NASSAU,

                    Defendants.
------------------------------------------X

                    DATE: January 28, 2021
                    TIME: 12:00  P.M.


          VIRTUAL EXAMINATION BEFORE TRIAL
of the Defendant, Christopher Todd, taken
by Mr. Torczyner, Via Zoom, pursuant to
Order, held at the offices Hindy Kaplan, a
Notary Public of the State of New York.



Page 2

A P P E A R A N C E S:

(All parties appearing electronically)

HARFENIST KRAUT & PERLSTEIN LLP
  Attorneys for the Plaintiff
  3000 Marcus Avenue - suite 2E1
  New Hyde Park/Lake Success, New York 11042
  BY: NEIL TORCZYNER

NASSAU COUNTY ATTORNEY'S OFFICE
  Attorneys for the Defendant
  One West Street
  Mineola, New York 11501
  BY: RALPH REISSMAN
      IAN BERGSTROM


MAGNA
LEGAL SERVICES

through F, that the precinct domestic incident liaison officer was supposed to determine, in connection with the retention of Mr. Valenti's long guns, correct?

A.    Yes, sir.

Q.    Do you know whether the precinct domestic incident liaison officer performed any of these functions?

A.    I do not know, sir.

Q.    Do you know if anyone formed these functions?

A.    Yes, sir.

Q.    Who performed those functions?

A.    Pistol License Section, sir.

Q.    13, below, "those functions requires the domestic incident liaison officer to interview the investigating detective."

Do you know whether there was an interview done of the investigating detective by the precinct domestic incident liaison officer?

A.    I do not, sir.

Q.    Do you know whether the Pistol



Q.    Who prepared that report?

A.    I believe Pistol License Section.

Q.    Is that the document that you previously looked at that was Luffman-18?

A.    It would have been that but additional entries, as well.

Q.    Where would those entries be found?

A.    In the fair notes, sir.

Q.    I'm going to ask you to please look at the administrative record that's part of Todd Exhibit 2.

A.    Yes, sir.

Q.    And there's an Exhibit J to the administrative record that begins on the document, bates number NC-363, do you see that?

A.    Yes, sir.

Q.    Are those the fair notes you're referring to?

A.    Yes, sir.

Q.    Where is the brief narrative report that you indicated was within the



fair notes?

A.   I believe it's denoted as NC-367, 4/9/2019, 2:44:04 timestamp.

Q.   That's the revocation assignment?

A.   That's a narrative report, sir.

Q.   So the revocation assignment header that's April 9, 2019, is what you recalled seeing as the narrative report, correct?

A.   A narrative report, yes, sir.

Q.   Was there another narrative report that you saw?

A.   I believe if you continue on this document, and the pages thereafter, 368, there's additional narratives from pistol license supervisor.

Q.   Well, that would be not the narrative report prepared by the investigator, that would be someone else's, correct?

A.   They're additional narrative reports.  What they're termed as in Pistol License Section, I don't know.



Page 98

A.    I have it.  Right here.  I have it, sir.

Q.    Okay.  So sub 20 on NC-272 indicates that the patrol division domestic incident coordinator reviews the narrative report and confers with the precinct domestic incident liaison officer.

Do you know whether the patrol division domestic incident coordinator conferred with the precinct domestic incident liaison officer in connection with the retention of Frankie Valenti's riffles?

A.    No, sir.  I don't know.

Q.    Is there anything in the record that you reviewed in making your determination on the appeal of the retention of Frankie Valenti's long guns that would indicate to you that the conferral of the domestic incident liaison officer and the domestic incident coordinator took place?

A.    In the precinct, no.  I am aware of it taking place in Pistol License Section between the investigator and



supervisors.  I am not familiar with anything in the precinct.

Q.    To your knowledge, did the parole division domestic incident coordinator confer with the pistol license investigator as far as this narrative report?

A.    I don't know, sir.

Q.    Is there anything in the file that would indicate to you that the patrol division domestic incident coordinator conferred with pistol licensing about the narrative report?

A.    No, sir.

Q.    And it's your understanding that that conferral was internal within the Pistol License Section between the author of the narrative report that's April 9, 2019, and her supervisor?

        MR. REISSMAN:  Objection.

A.    Since Pistol License Section is not a patrol manned they operate under a different -- same procedure, but it's not denoted with the specific identifiers of



Frankie Valenti's guns?

A.    I was told to determine whether or not the initial surrender and confiscation of Mr. Valenti's firearms was permitted under law and whether the department had standing to lawfully retain his long guns.

Q.    When was the initial that you just spoke of?

A.    Initial in what regard, sir?

Q.    You just testified that the initial --

A.    Confiscation, that's correct.

Q.    When was that?

A.    They were confiscated initially on July 15th or 16th, I believe.

Q.    So you were considering whether or not there was proper cause to take his long guns in July 2018?

A.    That's the initial step, sir, yes.  We had lawful authority to remove such guns and retain them.

Q.    If you take a look please at Todd Exhibit 3, which is just the



dated September 17, 2019 to you, is that correct?

A.    Yes, it is, sir.

Q.    Along with that letter is the long gun review record, do you see that?

A.    Yes, sir.

Q.    Are you testifying that following receipt of the long gun review record the Pistol License Bureau made a determination whether or not to return the guns?

A.    No, sir.  I can't speak to that.  The decision was made on April 11 to not return them.  He was provided the long gun review record at that time, he did not return it, and therefore there was no appeal pending.

Q.    So this long gun review record when it was finally reviewed in September, triggered a review of that April 11th decision, correct?

A.    The April 11th decision to retain Mr. Valenti's long gun, yes, sir.

Q.    As a result of this receipt of


MAGNA
LEGAL SERVICES

this completed long gun review record, this matter is referred to you to serve as appeals officer, correct?

A.    At some point after this was received, yes, it was provided to me to serve as the appeals officer.

Q.    If you can please turn to Todd Exhibit 12.

A.    I see that, sir.  I have it right here.

Q.    The bottom paragraph reads, "as a courtesy, enclosed herewith, please find an additional copy of the long gun review form.  Your client must complete, sign and date the form and submit it, along with any relevant supportive documentation to the Pistol License Section via certified mail."

        Do you see that?

A.    I do, sir.

Q.    What is the relevant support of documentation that's supposed to be provided?

A.    That's wholly within the individual's discretion, sir.  I have no



mandates or requirements as to what is submitted.  It's what the individual deems relevant to the retention of his long gun. It can be anything and everything.

Q.   What constitutes the determination?  Is there a document that constitutes the determination of the retention of the long guns?

A.   As we already discussed, sir, that was in April 11, 2019.

Q.   So the April 11th document was appealed by virtue of a long gun review form?

A.   Is that a question, sir?

Q.   Yes.

A.   Correct.

Q.   If you can please return to the April 11th document.

A.   I have it here, sir.

Q.   What in the April 11th document advises as to the reason why the long guns were not being returned?

A.   The revocation letter, sir?

Q.   Yes.



A.    If you look on page 236.

Q.    Yes.

A.    The first paragraph.

Q.    "Please be further advised that you have the ability to appeal both the revocation of your pistol license and the confiscation of your riffles and/or shotguns."

What in this document advises Mr. Valenti the reason that his rifles and shotguns are confiscated?

A.    The second paragraph.  As his licensed was revoked pursuant to penal law 400.11, he's required to surrender all pistols, long guns, shotguns, riffles and firearms upon revocation of a pistol license.

Q.    Other than 400.11, there was no specific reason why the shotguns and riffles were confiscated?

A.    They are confiscated as a result of July 15 and 16th incident, sir.

Q.    At that point they were evidence, correct?



position for the first time of appeals officer for the retention of long arms, were you provided with any handbooks or directives from the police department as to how to perform that function?

A.    I was not provided any specific handbook.  No, sir.

Q.    Were you trained in any way on how to perform the functions of an appeals officer for the retention of long arms?

A.    Not specific to retention of long arms.  But as for an appeals officer, yes, sir.

Q.    Okay.  What was the training you received in how to be an appeals officer?

A.    There was training on the job under previous appeals officers.  Officers that were currently serving, as well.

Q.    Who trained you?

A.    Detective lieutenant Christopher Bellistri, retired Detective Lieutenant Israel Santiago, and Deputy Chief Ronald Wolf.



Q.    Are any of the people you just mentioned attorneys?

A.    Yes, sir.

Q.    Which ones are the attorneys?

A.    Detective Lieutenant Christopher Bellistri and retired Detective Lieutenant Israel Santiago.

Q.    When did you receive the training with Mr. Bellistri?

A.    It was concurrent with Detective Santiago, and that was in April 2015, and continuing thereafter.  I don't have any date that it ended.

Q.    Is Mr. Bellistri still employed by the police department, to your knowledge?

A.    He is, he no longer serves as an appeals officer.

Q.    When did Mr. Mr. Bellistri cease serving as an appeals officer?

A.    I don't know.

Q.    When was the last time you recall him doing so?

A.    2016, but that's a very general


MAGNA
LEGAL SERVICES

guess.

Q.   You had mentioned a retired individual, as well, what was his name?

A.   Detective Lieutenant Israel Santiago.

Q.   When did Detective Lieutenant Santiago retire?

A.   September 2020.

Q.   Okay.  When do you recall the last time that Detective Lieutenant Santiago served as an appeals officer?

A.   I don't have any independent recollection, sir.

Q.   Well, your personal recollection, to the best that you --

A.   I don't know.  I don't keep tabs on when he's serving in that capacity, sir.

Q.   When is the last time you recall consulting with him as far as an appeal?

A.   I don't recall ever consulting with him regarding a specific appeal, sir.

Q.   When is the last time you


MAGNA
LEGAL SERVICES