**GT** | GreenbergTraurig

**Anthony Bagnuola**
Tel 516.629.9607
Fax 516.706.8666
Anthony.Bagnuola@gtlaw.com

April 17, 2026

<u>**Via ECF**</u>

The Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

      Re:    *Valenti v. Ryder, et al.*
               <u>Civil Docket No. 19-3990 (GRB) (LGD)</u>

Dear Judge Brown:

We write as counsel for Defendants in accordance with the Court's order of March 30. As set forth below and in the parties' Local Rule 56.1 Statements, genuine issues of material fact preclude summary judgment here.

    I.      <u>The Issues Are Sufficiently Narrowed for Trial</u>

The Complaint asserts six claims for relief, including alleged violations of Plaintiff's Second, Fourth, and Fourteenth Amendment rights under 28 U.S.C. § 1983 and an Article 78 challenge to the Nassau County Police Department's ("NCPD") firearm retention policies. *See* DE [29]. Two categories of claims have, however, been resolved by operation of law or Plaintiff's own actions. *First*, Plaintiff has expressly withdrawn his Fourth Amendment claim under § 1983 (First Cause of Action), which alleged that two NCPD officers coerced their way into his home and unlawfully seized his firearms. *See* DE [140] at 2 ("As to the Fourth Amendment claim (1st Claim), the Plaintiff moves to withdraw this claim under FRCP § 41(a)(2)."). *Second*, Plaintiff's claim for an injunction preventing Defendants from disposing of his firearms (Sixth Cause of Action) is moot. *See* Am. Compl. ¶¶ 164-168. After Plaintiff's weapons were confiscated, he was convicted of a felony gun charge in Suffolk County, which permanently disentitled him from the return of his firearms.

Plaintiff therefore proposes moving for summary judgment on a Fourteenth Amendment § 1983 claim, a *Monell* claim, and an Article 78 challenge to the NCPD's firearm retention policies. *See* DE [140] at 2.[1] Each claim stems from Plaintiff's contention that Defendants denied

---

[1] Plaintiff purports to seek summary judgment on a Second Amendment § 1983 claim but does not expound upon any theory of Second Amendment liability. Other courts have summarily dismissed Second Amendment claims stemming from a retention of longarms "because the right to bear arms is not a right to hold some particular gun." *Panzella v. Cnty. of Nassau*, No. 13-CV-5640 (JMA) (SIL), 2015 WL 5607750, at *11 (E.D.N.Y. Aug. 26, 2015), *aff'd sub nom.*, *Panzella v. Sposato*, 863 F.3d 210 (2d Cir. 2017); *see Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 230 (E.D.N.Y.

**Greenberg Traurig, LLP | Attorneys at Law**

April 17, 2026
Page 2

him a prompt, post-deprivation hearing, as required by *Razzano v. Cnty. of Nassau*, 765 F. Supp. 2d 176 (E.D.N.Y. 2011), and its progeny. As described below, however, these claims cannot be summarily resolved.

II.    Plaintiff's Due-Process Claims Cannot Be Resolved by Summary Judgment

Plaintiff's due-process claims relate to the NCPD's evaluative process for determining whether to return Plaintiff's guns.[2] As discussed below, those claims turn on disputed facts about Plaintiff's entitlement to, and the adequacy of, any post-deprivation hearing, which must be resolved by a jury rather than on summary judgment.

A.  Legal Framework

When evaluating "what process is due before the plaintiff may be deprived of" a constitutional interest, "[t]he appropriate process depends on the balancing of three factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Panzella*, 863 F.3d at 218 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). As it relates to "persons whose longarms are seized by Nassau County," the test requires "a prompt post-deprivation hearing." *Razzano*, 765 F. Supp. 2d at 191. To comport with due process, that hearing: (1) must be held before a neutral decision-maker; (2) is unnecessary when the firearms are evidence, fruits, or instrumentalities of a crime; and (3) must place the burden on Nassau County to show a legal entitlement to maintain possession of the weapons. *See id.* Plaintiff contends that Defendants failed to comply with this requirement in two ways: (1) by not timely providing him a Long Gun Review Record ("LGRR") to initiate administrative review; and (2) by administrating a procedurally deficient post-deprivation process. *See* DE [140] at 3. But factual issues surround both contentions.

B.  The Evidentiary Nature of Plaintiff's Long Arms is Disputed

No *Razzano* hearing is required when the NCPD confiscates long arms that are evidence, fruits, or instrumentalities of a crime. The firearms confiscated from Plaintiff supported multiple charges of criminally possessing a weapon, in violation of New York law. *See* Def. 56.1 Stmt. ¶ 14. Although the charges were dismissed, *see id.* ¶¶ 20, 25, that dismissal was erroneously based on an examination of the wrong weapons; upon reinvestigation, a police investigator determined that two of Plaintiff's seized rifles were illegal assault rifles containing banned characteristics. *See id.* ¶ 24. The Notice of Final Determination upholding Defendants' retention decision explicitly stated that "the handguns and longarms confiscated from [Plaintiff] on July 16, 2018, were evidence of the crimes for which he was charged and were properly retained by the Department as such when the charges against Appellant were dismissed on November 9, 2018." *Id.* ¶ 181. Under

---

2019) ("The Plaintiff does not dispute that, at least regarding the longarms, there is nothing that impacts [his] ability to acquire additional firearms.").

[2] Although Plaintiff's letter motion does not distinguish between handguns and longarms, Defendants assume the due-process claims pertain to the confiscation of Plaintiff's longarms. Based on New York's discretionary pistol licensing regime, a "due process claim regarding [a] handgun license and handguns d[o] not state a claim." *Weinstein*, 386 F. Supp. 3d at 234.

**Greenberg Traurig, LLP | Attorneys at Law**

www.gtlaw.com

**April 17, 2026**
Page 3

these circumstances, whether Plaintiff was entitled to a hearing under *Razzano* in the first place is genuinely disputed. Summary judgment should be denied on that basis alone.

C.    Timeliness of Administrative Review is Disputed

Even if a *Razzano* hearing was required, the promptness of Plaintiff's hearing is disputed. Plaintiff acknowledges that an LGRR is the procedural mechanism to seek administrative review of the NCPD's retention decision. *See* Def. 56.1 Stmt. ¶ 12. Plaintiff's contention that the NCPD failed to provide him an LGRR in a timely manner is the driving force behind his claim that he was denied due process. *E.g.*, DE [140] at 3; Am. Compl. ¶ 30 (alleging "[n]o Long Gun Review Record form was received by Valenti prior to the commencement of this lawsuit"); *id.* at ¶ 128 (eventual receipt of an LGRR in August 2019 "did not constitute a prompt post-deprivation hearing" as required by *Razzano*). Yet Plaintiff admits this dispositive fact is disputed. In the instant motion, Plaintiff concedes "the NCPD asserts that a LGRR was sent on May 1[, 2019], *which is disputed by Valenti*." DE [140] at 2 (emphasis added). This admission ends the inquiry.

Contemporaneous police notes from May 1, 2019, reflect that Sgt. John Tartamella of NCPD's Pistol License Section ("PLS") sent by certified mail, return receipt requested, an appeals packet to Plaintiff's counsel, Neil Torczyner, Esq. *See* Def. 56.1 Stmt. ¶ 13. Those materials included an LGRR. *See id.* ¶ 144. PLS subsequently received a delivery receipt confirming the packet arrived at Torczyner's law office. *See id.* ¶ 13. That mailing—which was consistent with NCPD Procedure OPS 10023, entitled "Removal and Dispositions of Weapons—Domestic Incidents/Threats to Public Safety"—followed correspondence in which Torczyner informed NCPD that he represented Plaintiff and directed NCPD to communicate with Plaintiff through him. *See id.*, Ex. "F." It also followed Torczyner's demand that relevant "instructions" for perfecting an administrative appeal be provided to him. *See* DE [102] at 170/555. So acute is the factual dispute around this issue that Defendants filed a motion to disqualify Torczyner under the advocate-witness rule, arguing that "[d]uring the anticipated jury trial" in this case, Torczyner will "unquestionably" be a "fact witness[] charged with establishing whether the NCPD timely or 'promptly' mailed the appellate documentation affording Mr. Valenti due process." DE [102-1] at 15; *see also* DE [112] (Judge Dunst noting that "on or about May 1, 2019, the NCPD sent a mailing to" Torczyner and that "[t]he parties dispute the contents of that mailing."). Valenti's perfunctory "dispute" of the mailing is insufficient to resolve this genuine factual issue, especially when the Court will construe the motion record in the light most favorable to Defendants and draw all reasonable inferences in their favor. *See SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).

Defendants acknowledge subsequent (non-binding) holdings that OPS 10023 does not, in every case, guarantee as *prompt* a hearing as *Razzano* contemplates. *E.g.*, *Weinstein*, 386 F. Supp. 3d at 236. But whether Plaintiff's hearing was sufficiently prompt is a question of fact to be determined by a jury. In this regard, courts have recognized a continuum of reasonableness—while "a lengthy deprivation *can* be enough to violate the Fourteenth Amendment right to due process," *Panzella*, 863 F.3d at 218 n.9 (emphasis added), a review time of "two to three months…is not an unreasonable length of time," *Weinstein*, 386 F. Supp. 3d at 236-37.[3] It is undisputed that Plaintiff

---

[3] *See also Kellner v. Cnty. of Nassau*, No. 21-CV-3990 (AMD) (ST), 2026 WL 879662, at *11-12 (E.D.N.Y. Mar. 31, 2026) (five years not a "timely process"); *Carroll v. Krumpter*, 397 F. Supp. 3d 234, 248 (E.D.N.Y. 2019) (three-and-a-half years "too long"); *Weinstein*, 386 F. Supp. 3d at 237 (four years "too long to wait for an adjudication").

**April 17, 2026**
Page 4

received a Notice of Final Determination approximately 15 months after the seizure of his long arms. *See* Def. 56.1 Stmt. ¶¶ 9, 217. A jury should decide whether that was sufficiently prompt to comport with due process.

### D. Adequacy of Administrative Review is Disputed

Nor can the Court decide whether the administrative review Plaintiff received was insufficient as a matter of law. Plaintiff asserts that "the NCPD held a 'hearing' (without notice or witnesses) to determine whether the decision not to return the long arms was correct." DE [140] at 3. But Plaintiff cites no case establishing specific procedural rules for a *Razzano* hearing. *Razzano* itself does not purport to create a comprehensive rubric for post-deprivation hearings. When that case was decided, "the County had *no* procedure governing the return of long arms confiscated" by police, *Panzella*, 765 F. Supp. 2d at 185 (emphasis added), so it makes sense that Judge Spatt's decision sought only to establish a procedural floor compelled by the constitution. Hence, the minimal requirements—neither of which is challenged in the instant request—that a hearing have a neutral arbiter, with the County bearing the burden of proof. *Panzella* likewise did not set forth any specific rules or standards for post-deprivation hearings. Judge Azrack simply considered whether *Razzano*'s baseline constitutional requirements were satisfied by a Sheriff's Department policy not to return guns confiscated following entry of a family court order "unless and until the Sheriff's Department is served with a court order directing the return." *See* 2015 WL 5607750, at *4. These cases show that the sufficiency of an individual *Razzano* hearing is *sui generis*, and Plaintiff's emphasis on an alleged lack of notice and witnesses is untethered from relevant legal authority. To the extent courts have found due-process problems in other cases, it has been a question of promptness rather than notice or an opportunity to be heard. *See Weinstein*, 386 F. Supp. 3d at 236 (OPS 10023 "establishes a thorough procedure that ensures longarms are only returned to law abiding, responsible individuals" but "does not provide swift relief.").

In any event, factual disputes surround the sufficiency of the process afforded to Plaintiff, who does not elaborate on his assertion that he lacked "notice" of any administrative review process but, as described above, participated through counsel at all relevant stages. And despite now implying that witnesses should have testified, undisputed pretrial testimony establishes that Plaintiff had the opportunity to offer evidence in support of his position but elected not to. *See* Def. 56.1 Stmt. ¶¶ 209-11. A jury should decide whether that process was sufficiently reliable to comport with due process.

*     *     *

For all these reasons, the Court should deny Plaintiff's request for a pre-motion conference or, alternatively, construe the record as a motion and deny it in its entirety.

Respectfully submitted,

John P. McEntee
Kathryn C. Cole
Anthony Bagnuola

cc:    Counsel of Record (via ECF and email)